HOLLOWAY to his own use and use of State Accident Fund *v.* EICH

[No. 16, September Term, 1969.]

*Decided November 12, 1969.*

The cause was argued before HAMMOND, C. J., and McWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*John J. Hirsch,* with whom were *Francis B. Burch, Attorney General, J. Howard Holzer, Special Attorney,* and *Charles R. Goldsborough, Jr., Assistant Special Attorney,* on the brief, for appellant.

*Austine W. Brizendine* for appellee.

Amicus Curiae brief filed by The Medical and Chirurgical Faculty of the State of Maryland. *John F. King, Thomas G. Young, III* and *Anderson, Coe & King* on the brief.

Amicus Curiae brief filed by the Maryland Chiropractic Association. *Richard T. Rombro* on the brief.

McWILLIAMS, J., delivered the opinion of the Court.

This litigation is an outgrowth of appellant Holloway's brief encounter with appellee's MG roadster in the late afternoon of 31 March 1965 on Cub Hill Road near its intersection with Powderhorn Lane in Baltimore County. The locale is about two miles northeast of the intersec-

tion of Old Harford Road and the Baltimore Beltway. A year or so later Holloway (to his own use and to the use of the State Accident Fund) sued appellee (Eich) alleging serious and permanent injuries and claiming $25,000 damages. The trial took place before Proctor, J., and a jury, on 23 October 1968. The verdict of the jury was in favor of Eich. From the ensuing judgment against them for costs the appellants have taken this appeal. They advance four contentions only one of which, however, requires more than cursory notice.

In March 1965 trash was collected along Cub Hill Road by the Stambaugh Company. At the time and place mentioned above one of its trash trucks, driven by Holloway's father, came to a stop at a point in the northbound lane, there ten feet wide, of Cub Hill Road. The southbound lane, which is separated from the northbound by a double yellow line, is about eight feet wide. Holloway and Dublin Johnson, his cousin, had been employed to pick up the trash cans, empty them into the truck and replace them along the side of the road. Eich, also northbound on Cub Hill Road, reduced his speed to about 15 miles per hour when he saw the truck. He observed Holloway, carrying a trash can that had been emptied, walk from the truck to the west side of the road. When Holloway reached the shoulder, Eich turned into the southbound lane and proceeded to pass between Holloway on the shoulder and the truck in the northbound lane. In the process the left tip of his rear bumper came in contact with Holloway's left leg. He said he heard "a sort of a thud, a dull thud, a bump" at the rear of his car as he went by Holloway. After he had stopped in the northbound lane, in front of the truck, he went back and asked Holloway "if he had kicked the back end" of his car and "if he had been hurt." Holloway testified that, having put down the empty can, he picked up a full one that was resting on the shoulder, placing his left hand "on the bottom of the can" and his "right hand on the top * * *," which put the can on his left side. He turned to the left and when he took a step forward with his left

foot he came in contact with Eich's rear bumper. He said he was nearly blind in his left eye, a circumstance which, in this context, seems to be without significance.

Officer Howard W. Owings of the Accident Investigation Division of the Baltimore County Police arrived at the scene of the accident within a half hour after it happened. He said Holloway, when he arrived, "was either in the ambulance or on the way to the hospital, or was waiting to get in the ambulance, * * *." He could not recall any conversation with Holloway but it appears that he interviewed his father, his cousin and Eich. He made his report on the form provided by the (Maryland) Department of Motor Vehicles, showing by a diagram in a space provided therefor the relative positions of the vehicles and the injured pedestrian. Under the heading "Describe What Happened" he wrote the following:

> "Investigation revealed — Unit 1 [Eich] was attempting to pass a garbage truck that was stopped in the roadway. As unit 1 was passing the truck, one of the collectors [Holloway] that was on the South edge of the rd. started to walk North across Cub Hill Rd. and *walked into the left rear bumper* of unit 1. The width of Cub Hill Rd. is 18 ft." (Emphasis added.)

At trial in the court below Officer Owings was produced as a witness by Eich. He was examined at length and in detail by counsel for Eich and cross-examined in like manner by counsel for Holloway. The redirect examination was brief. Nowhere in the direct, cross or redirect examination of the officer, except in respect of weather conditions, was the accident report mentioned or referred to. The following are excerpts from the re-cross and second redirect examination:

"RECROSS EXAMINATION
  "By Mr. Hirsch:
"Q. I have one question, Officer: I believe that you had on the diagram that this so-to-speak road comes around like that, is that right?

"(Mr. Brizendine) Let him draw it.

"Q. (Mr. Hirsch) Do you want to draw it? I have no objection. Come on down and draw it how you have it on your diagram. It probably would be better.

"(Witness goes to the blackboard.)

"A. On my diagram this is just roughly how it was; cut off here.

"Q. Where do you have the truck in the diagram? A. I had the truck located right here.

"Q. About there? A. Yes.

"Q. Where did you have the car? A. The car would be here.

"Q. Is that— A. This is on my diagram.

"Q. Where do you have the shoulder of the road? A. The shoulder of the road is not marked on the diagram.

"Q. Well, don't you have it? I show you this diagram; I presume this is the same as yours although it doesn't look it. A. I think it was a photostatic copy.

"Q. Where do you have this man's head and body in relationship to the shoulder on this diagram?"

* * *

"A. On this diagram that I have, it shows his head that way.

"Q. Do you see any part of his body on this diagram that is on the road?"

* * *

"Q. On this diagram, I show you this report; do you see any part of this man's body on the road? A. On this diagram it shows the feet just beyond this spot.

"Q. Will you put a little x mark there? A. Right about there.

"Q. Right about there? A. Yes.

"Q. And is that, where did you have the car on this diagram in relationship to his feet? A.

On our diagram I have the car would be right so. This is not to scale, counsel.

"Q. Neither is this. A. Right.

"(Witness returned to the witness stand.)

"Q. (Mr. Hirsch) This is an official report that I'm referring to. A. Yes.

"Q. The photostatic copy? A. Yes.

"Q. And, Officer, you had this actually happening just beyond the curve in the road, is that right? A. Yes, sir; that's not to scale either.

"REDIRECT EXAMINATION

"By Mr. Brizendine:

"Q. You just identified this as an official report. Is this it; is this a copy of it?

"(Mr. Brizendine) Do you want to take ours?

"(Mr. Hirsch) Yes, they're both official reports.

"(Mr. Brizendine) I'll take either one you want.

"Q. (Mr. Brizendine) This is the copy of the official report? A. Yes, sir.

"(Mr. Brizendine) I'll offer it.

"(Mr. Hirsch) I object to it's being offered.

"Your Honor, I objected and I'd like to have a ruling.

"(The Court) Overruled; you referred to it.

"(Mr. Hirsch) But I didn't refer to the full report.

"(The Court) You referred to the report.

"(Mr. Hirsch) Yes.

"(The Court) Reference to a document by either side makes it admissible automatically at the request of the other side.

"(Mr. Hirsch) Including the Officer's comments?

"(The Court) That's the risk you take when you refer to it.

"(Mr. Hirsch) I object.

"(The Court) Overruled."

## I and II.

Holloway insists that the evidence is legally sufficient

to establish, as a matter of law, that Eich was guilty of primary negligence, and that there is no evidence legally sufficient to show contributory negligence on his part. Therefore, he concludes, Judge Proctor succumbed to error when he left it to the jury to decide these two questions. We are not persuaded that Judge Proctor erred. Indeed his submission of the case to the jury seems to us to have been so obviously correct as to relieve us of the necessity of discussing it further.

## III.

Holloway next contends that Judge Proctor "committed prejudicial error in admitting that portion of the police report wherein Officer Owings set forth his conclusions, based upon information received from persons other than the parties to these proceedings, as to how the accident in question occurred." This requires "more than cursory notice."

The question whether police accident reports are admissible has been often before the courts. Generally speaking, the great majority have denied their admission on the grounds that the officer's notations in the report are often based, in whole or in part, upon inadmissible hearsay or that the officer's comments in respect of responsibility for the accident violate the rule against the expression of an opinion. *See* C. McCormick, *Evidence* § 294 (1954) ; 69 A.L.R.2d 1148, 1151 (1960) ; 32 C.J.S., *Evidence* § 638 (1964) ; 30 Am.Jur.2d, *Evidence* § 934 (1967). A growing number of courts have held, however, that the portion of an accident report based on the officer's first-hand knowledge is admissible as proof of the facts recorded therein upon the ground that it is either a public record or a record made in the regular course of business. Thus, the officer's notations of the length of the skid marks, the dimensions of the road, the make of the vehicles involved, visibility and the weather would be admissible under the latter view, while his notation of how the accident occurred and who was responsible for the injury or damage would be excluded if he had

not been at the scene at the time of the accident. *See, e.g.,* the recent case of *Mucci v. LeMonte,* 254 A. 2d 879 (Conn. 1969).

The Maryland cases involving the admissibility of accident reports suggest that we would not be averse to the admission of at least a portion of the report. Two of our decisions deal with the admission of accident reports. In *Cogswell v. Frazier,* 183 Md. 654 (1944), an action was brought by a motorcyclist who had been struck by the defendant's car. The investigating officer testified for the defendant and related statements made by him at the scene. The plaintiff then offered the officer's report which was admitted over the protest of the defendant. Judge Melvin, for the Court, said that the report was properly admitted inasmuch as "* * * the oral testimony of the witness, which, significantly, was offered on behalf of the defense, simply confirmed the statements in his written report." *Id.* at 661. More recently, in *Levine v. Beebe,* 238 Md. 365 (1965), an action was brought by an infant plaintiff who had been struck by the defendant's car. At the trial a diagram of the scene of the accident drawn by the investigating officer was admitted into evidence. It revealed the length of the skid marks, the point of impact and the point to which the plaintiff had been thrown—items within the personal observation of the investigating officer. Judge Marbury, for the Court, said that the diagram was properly admitted under the business record statute, Code, Art. 35, § 59 (1965 Repl. Vol.).

An examination of the cases dealing with related public reports reveals an approach consistent with that noted above. A memorandum of recorded statements of firemen as to what occurred at the scene of a fire was held to be admissible in *Aravanis v. Eisenberg,* 237 Md. 242 (1965). It is important to note that only those statements of firemen who had testified or were present in the courtroom were admitted. *See Cogswell v. Frazier, supra.* Judge Oppenheimer, for the Court said:

> "We think this evidence was admissible under the business records statute. The fire marshal testified that the report was kept in his files, that it was a record regularly kept by the Fire Department in the course of business and that the photostatic copy offered in evidence was an accurate reproduction of the notes in his file. The requirements of Section 59 were fully met." *Id.* at 262.

It is also well settled in this state that the part of a hospital record containing the plaintiff's explanation as to how the accident occurred is inadmissible, whereas that portion containing the patient's history is admissible whether or not the statements were made by the patient himself. *E.g., Old v. Cooney Detective Agency,* 215 Md. 517, 524-25 (1958). Holloway, however, does not complain simply because the entire accident report was admitted. His protest is directed to that portion of the report containing the officer's explanatory comments. Eich, on the other hand, claims that Holloway's objection was waived when he examined the officer as to the accuracy of his diagram.

The precise question here presented, until now, seems not to have been considered by us. It appears, however, that it has been raised in other jurisdictions and the consensus indicates that "* * * cross-examination as to a portion of a report may open the door for the admission on redirect examination of the portion of the report about which the officer was cross-examined." 69 A.L.R.2d at 1151. In *Derrick v. Blazers,* 355 Mich. 176, 93 N.W.2d 909, 69 A.L.R.2d 1143 (1959), the action was brought by the plaintiff to recover for damages sustained as a result of his being struck by a taxicab. At the trial the investigating officer, produced by the defendant, in relating the physical facts which he observed at the scene of the accident, was allowed to use his report to refresh his memory. On cross-examination the plaintiff asked the officer to explain why a certain item had been omitted

from the report. On redirect examination the defendant offered the entire report, which was admitted into evidence over the plaintiff's protest. On appeal the Michigan court pointed out that:

> "Accident reports made by police officers are normally held to be inadmissible as evidence when the officer who made the report lacked personal knowledge of the information contained in the report."
>
> \* \* \*
>
> "*On redirect examination, however, defendants had the right to have submitted to the jury those portions of the report about which plaintiff's counsel had asked questions on cross-examination. \* \* \* As to these portions, objection had been waived.*" *Id.* 93 N.W.2d at 911 (emphasis added).

The court held that the lower court should not have admitted that portion of the report, not referred to during cross-examination, which contained objectionable hearsay and the conclusions of the police officer. *See Halko v. State,* 204 A. 2d 628, 631 (Del. 1964) ; *Watkins v. Holmes,* 35 A. 2d 395 (N.H. 1943).

We think the rule set forth in *Derrick v. Blazers, supra,* would have general application in Maryland. In the case at bar, however, the circumstances seem to permit a different result. According to the instructions found on the accident report form, the purpose of the diagram and the written comments is to "describe what happened." The instruction which refers to the space provided for the written comments requires the officer to "refer to vehicles by number." The same instruction appears above in the space provided for the diagram. Both the diagram and the written comments referred to Eich's car as "unit 1." As we see it, the diagram and the comments should be read together inasmuch as they refer to each other and are intended to describe how the accident occurred. We are of the opinion, therefore, that

when counsel for Holloway cross-examined the officer as to the content of the diagram, he waived his objection not only to the admission of the diagram but as well to the explanatory comments. It is important to note that both the diagram and the written comment were based not upon the officer's personal observations but upon the observations of those present at the scene. Thus, when Holloway's counsel cross-examined the officer as to the diagram he also waived his objection to anything else in the report based upon the same hearsay information. *Cf. United States Fidelity & Guaranty Co. v. Continental Baking Co.,* 172 Md. 24, 31-32 (1937), and *Eckels & Sons Ice Mfg. Co. v. Cornell Economizer Co.,* 119 Md. 107, 116-17 (1912). It is true, of course, that there is nothing in the diagram or the testimony adduced in respect thereof which relates specifically to the phrase "walked into the left rear bumper of unit 1," but we think it is clear that this was information which the "investigation revealed" rather than the result of a deduction or a conclusion by the officer. It seems fair to say that the information must have come from either Dublin Johnson or Holloway's father, or perhaps both. Eich, having passed Holloway, could not have seen what happened. While no one seems to have thought of it, at the time, the report (or testimony by the officer to the same effect) might have been admissible to rebut the testimony of Dublin Johnson which, of course, was to the contrary. In any event we think there ought to be some limit beyond which it is neither reasonable nor practical to attempt the fragmentation of statements or comments of this type merely to satisfy the hearsay rule. While we shall not undertake to stake out that limit, we think the questioned statement is well beyond it.

Although, for the reasons stated, we think Judge Proctor's admission of the accident report does not add up to prejudicial error, it must not be supposed that we agree with his reason for so ruling. The rule, as announced by him, goes a great deal further than we care to go.

## IV.

Holloway's final contention arises out of Judge Proctor's refusal to allow a chiropractor to interpret X-rays he had made of Holloway and "to testify about the prognosis in regard to * * * [Holloway's] physical condition." Judge Proctor said that in his judgment "the educational background of a chiropractor in general, and with this witness in particular, does not qualify him to interpret X-rays * * *." He went on to say that, in his opinion, "a chiropractor is not qualified to make a prognosis * * * as to future prospects so far as this plaintiff is concerned, particularly in relation to his lower back." Since the admission of such testimony could impinge only on the amount of any damages that might have been assessed by the jury, had they found for the plaintiff, it is unnecessary for us to consider this interesting question.

*Judgment affirmed.*
*Costs to be paid by the appellants.*