BARRY A. KUHL ET AL. *v.* AETNA CASUALTY
& SURETY COMPANY

[No. 1089, September Term, 1981.]

*Decided April 13, 1982.*

The cause was argued before MOYLAN, LISS and WEANT, JJ.

*D. Clifford Crook, III,* with whom were *Samuel O. Jackson, Jr.* and *Israelson & Jackson, P.A.* on the brief, for appellants.

*Thomas E. Lynch, III,* with whom were *James R. Eyler* and *Miles & Stockbridge* on the brief, for appellee.

LISS, J., delivered the opinion of the Court.

Barry A. Kuhl and Stanley Beutelspacher, appellants, seek by this appeal to overturn a jury verdict returned in the Circuit Court for Anne Arundel County in which the jury found that the collision of a motor vehicle with the appellants was an intentional act committed by one Leonard Richard Prahl.

The case arose out of a declaratory judgment action filed by Aetna Casualty and Surety Company, appellee (hereinafter "Aetna") in the Circuit Court for Anne Arundel County in which Aetna sought a determination as to whether insurance coverage existed under two policies of insurance for injuries sustained by the appellants when they were struck by an automobile driven by Prahl on U.S. Route 50 outside of Cambridge, Maryland. The named insured on each of the policies was Sellers Sales and Service, Inc., an automobile dealership which employed Prahl as a salesman and supplied an automobile to Prahl for business purposes. At the time the injuries were sustained by the appellants, Prahl was operating a vehicle owned by Sellers Sales and Service, Inc.

Each of the policies of insurance provided coverage for bodily injuries sustained during an "occurrence." Each policy defined "occurrence" to mean "an accident . . . which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The appel-

lants and appellees have agreed upon the following statement of facts:

In the early morning hours of August 7, 1977, an automobile operated by Prahl and owned by Prahl's employer, Sellers Sales & Service, Inc., struck and injured Appellants Kuhl and Beutelspacher, as Appellants were walking on the eastbound shoulder of U.S. Route 50 just outside of Cambridge, Maryland. The impact occurred shortly after Prahl had abandoned Kuhl and Beutelspacher and two other passengers on the side of the highway.

From the testimony and other evidence produced at trial, the parties agree that the sequence of events leading up to the impact were as follows:

In the very late evening hours of August 6, 1977, or in the very early morning hours of August 7, 1977, Kuhl and Beutelspacher left Baltimore in a vehicle driven by Kuhl and were headed for Ocean City. Shortly after their departure, and in Glen Burnie, Appellants developed engine trouble which left them without a means of attaining their destination. Prahl stopped in Glen Burnie and offered Appellants a ride to Ocean City if Appellants would pay for gas and tolls. Appellants accepted the ride even though Beutelspacher, the only one of the Appellants to testify at the trial, conceded that he did not know Prahl. Between the point of departure from Glen Burnie and the time Appellants and Prahl had reached Cambridge, Maryland, Prahl apparently made a homosexual advance toward one if not both of the Appellants. Beutelspacher testified at trial, after his memory was refreshed from the transcript of his testimony in the criminal case against Prahl, about an advance Prahl made toward Kuhl including the extension of his hand across the gap between the front bucket seats of the vehicle to within an inch of Kuhl's leg. In response to this, Kuhl picked up a

hairbrush and held it above his right ear. Thereafter, Kuhl changed seats with Beutelspacher.

Shortly after the threesome had crossed the Choptank Bridge and continued on U.S. Route 50, Prahl, at the insistence of Appellants, stopped the vehicle to pick up two young ladies, Mary Benbow and Deborah Walker, who were hitchhiking on the side of the highway. After the fivesome had proceeded only some 5 or 10 minutes, Prahl stopped the vehicle on the shoulder of U.S. Route 50, so that everyone could get out to relieve himself (or herself). While the vehicle was stopped on the shoulder of U.S. Route 50, something developed between Prahl and Kuhl which resulted in Prahl being knocked to the ground with various of his possessions being scattered on the shoulder of U.S. Route 50. Prahl got up, ran to the vehicle and, thereafter, sped off eastbound on U.S. Route 50, leaving his four passengers stranded on the shoulder of the highway.

The two young ladies and Appellants began to walk eastbound on the shoulder of U.S. Route 50, hitchhiking as they went, with the two young ladies walking backwards facing the traffic and Appellants walking some distance ahead of them with their backs to the traffic. Only several minutes later and after the foursome had walked some 100 yards from the point where the altercation had occurred between Prahl and Kuhl, the vehicle driven by Prahl approached the hitchhikers. Prahl, who had sped off from the scene of the altercation, went "full circle" on U.S. Route 50 and now was headed back eastbound toward the pedestrians. As the vehicle approached the four pedestrians, and in the testimony of the two young ladies, the only ones in a position to observe the approaching vehicle, Prahl's vehicle came right at them. Walker testified that the sound of the engine increased as the vehi-

cle approached which she attributed to Prahl's putting his foot on the gas. Benbow and Walker, who were facing the approaching vehicle, and although in fear for their lives, were able to get out of the way. Appellants, who were walking with their backs to the traffic, were struck. There were no skid marks at the scene of the impact and Prahl left the scene, without stopping, immediately after the impact.

Later that same day representatives of the Maryland State Police received a tip that Prahl had left the State of Maryland and had gone to Chester, Pennsylvania. The Police were able to contact Prahl in Chester and Prahl agreed to return to the Maryland State Police Barracks in Cambridge. There, after receiving *Miranda* warnings, Prahl signed a written statement, prepared by Sergeant Donald H. Cox of the Maryland State Police. In that statement, which Appellants proffered at trial, Prahl admitted striking Kuhl and Beutelspacher. Prahl was placed under arrest and subsequently tried and convicted in the Dorchester County District Court for assault and battery upon the persons of Kuhl and Beutelspacher. Prahl's convictions were final.

At the trial in this case (and after the transcript of the criminal proceedings had been used to refresh the recollections of two witnesses, one of whom was Appellant Beutelspacher) Aetna offered into evidence a certified and true copy of the convictions and related docket entries of the District Court of Maryland for Dorchester County on the criminal charges of assault and battery upon the persons of Kuhl and Beutelspacher arising out of the events of August 7, 1977. Prahl had pled not guilty to the charges but declined to testify in his own defense at the criminal trial. Over objection of Appellants, the court admitted a certified copy of docket entries and convictions into evidence.

The Appellants in their case attempted to have Sergeant Cox (after he had testified to the circumstances preceding his questioning of Prahl and his taking of a written statement) testify as to what Prahl had told him as contained in the aforesaid signed statement, but the court sustained Appellee's objection to such testimony. The Appellants then offered the signed written statement of Prahl taken by Sergeant Cox, but again, the court sustained Appellee's objection to the statement. The statement was then proffered and marked for identification.

Defendant Prahl did not file an Answer to the Declaration nor did he make an appearance at trial. At the time of the trial, all parties understood him to be residing out of the State of Maryland.

The parties are in agreement that as a consequence of his act, Prahl was convicted in the District Court for Dorchester County of separate offenses for assault and battery upon the persons of Kuhl and Beutelspacher. Prahl was named as a defendant by Aetna in the declaratory judgment action and although he was served he neither filed an answer to the action nor made an appearance at trial.

At the close of appellants' case at the initiative of appellants and appellee the trial judge submitted the following special verdict question to the jury: "Was the striking of Barry Kuhl and Stanley Beutelspacher expected or intended by Leonard Richard Prahl?" The jury answered the question in the affirmative.

It is from that special verdict judgment that this appeal was filed. Appellants raise the following three issues to be determined by these proceedings:

I. Did the lower court err in admitting into evidence a certified true copy of the conviction of Prahl together with related docket entries on criminal charges of assault and battery arising out of the same incident?

II. Did the lower court err in refusing to admit into evidence a signed written statement Prahl had given to the Maryland State Police approximately 12 hours after the incident resulting in injuries to appellants?

III. Did the lower court err in refusing to admit the oral testimony of a Maryland State Police Officer as to Prahl's oral statement to said officer, which statement was memorialized in the written statement referred to in Issue II?

I.

At trial the presiding judge permitted the appellee, over objection, to place into evidence in the case in chief a certified copy of the docket entries in the District Court which established that Prahl had been accused of criminal charges of assault and battery arising out of the aforementioned incidents in this case. In addition, the trial judge, over objection, permitted the appellees in their case in chief to put into evidence a certified true copy establishing that Prahl was convicted of assault against each of the appellants. Appellants argue that the admission of these records into evidence was reversible error.

In support of their contention, appellants offer a number of cases decided by the Court of Appeals in which it was held that as a general rule a judgment in a criminal prosecution is not competent evidence to establish the truth of the facts in dispute in a civil action for damages occasioned by the offense of which the party stands convicted. *See General Exchange Insurance Corporation v. Sherby,* 165 Md. 1, 165 A. 809 (1933). In *Sherby,* the Court of Appeals expressed the reasons for the general rule as follows:

> The reasons for this exclusion of the judgment in a criminal case as evidence of the plaintiff's claim against the traverser are various. There is a weighty difference in the parties, objects, issues, procedure, and results in the two proceedings, with

different rules with respect to the competency of the witnesses and the relevancy, materiality, and weight of the testimony. *Wharton's Criminal Evidence* (10th Ed.), secs. 570-570d. In a civil proceeding, the act complained of is the essential element, but in a criminal prosecution it is the intent with which the act is done. There were, moreover, other considerations in support of the discretion exercised by the court. The charge before the justice of the peace in the criminal prosecution was there heard and determined upon the testimony then produced, and, although the accusation in the criminal trial involved to a certain extent the issue at bar in the civil action, the jury in the suit were functioning in a different procedure, wherein neither the witnesses, nor the testimony, nor the issues were necessarily the same; and where, although the defendant might nevertheless be guilty of the crime of reckless driving at the time of the happening of the accident, there were possible defenses in bar to the right to recover, such as plaintiffs' contributory negligence, or that the defendant's wrongful act was not the proximate cause of the injury. [165 Md. at 7].

*See also Brooks v. Daley,* 242 Md. 185, 218 A.2d 184 (1966); *Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 59 A.2d 313 (1948).

In *Galusca v. Dodd,* 189 Md. 666, 57 A.2d 313 (1948), the Court of Appeals had before it an action for damages for assault and battery. The trial judge admitted evidence to show that the defendant had been arrested and charged, but excluded evidence that there was a trial and a conviction. In restating the rule governing such situations, the Court stated:

This Court has formulated the rule that, in the trial of a suit for damages for assault, evidence that the defendant has been tried and convicted for the assault in a criminal prosecution *is inadmissible in*

> chief for the purpose of proving the fact that the
> assault was committed, but such evidence may be
> admitted on cross-examination of the defendant.
> *Baltimore & Ohio R. Co. v. Strube,* 111 Md. 119,
> 125, 126, 73 A. 697; *Pugaczewska v. Maszko,* 163
> *Md. 355, 163 A. 205.* In the case at bar the judge
> admitted evidence to show that defendant had been
> arrested on the criminal charges, but excluded evi-
> dence to show that there was a trial and conviction.
> The evidence which was admitted was not
> prejudical to defendant, even if irrelevant. We find
> no reversible error in the admission of this evidence
> or in allowing an officer to testify that plaintiff's
> charges against defendant were entered on the
> docket at the Northern Police Station. [Emphasis
> added]. [189 Md. at 669].

Appellees have cited in support of the admissibility of the
certified copies of the District Court judgments only one
Maryland authority, *Wald v. Wald,* 161 Md. 493, 159 A. 97
(1931). In *Wald,* the Court of Appeals had before it a hus-
band and wife who were engaged in a hotly contested divorce
proceeding. The issue before the Court was whether the hus-
band had deserted and abandoned his wife under such cir-
cumstances as would support the grant of a divorce decree to
the wife on the grounds of desertion. During the course of the
trial, the chancellor permitted the wife to offer into evidence,
*without objection by the husband's counsel,* proof by parol
evidence of a number of successive prosecutions and con-
victions of the husband for desertion and non-support of the
wife. In *Wald,* the Court of Appeals stated at p. 498:

> As the result of these successive prosecutions,
> where the issue was an abandonment of the wife,
> sentences were imposed which have compelled the
> accused and convicted husband constantly to pay to
> his wife a specified monthly amount from 1922 to
> the bringing of his suit for divorce in 1929, when he
> was paying fifteen dollars every week for the sup-
> port of his wife and infant daughter pursuant to a

judgment of the Criminal Court of Baltimore City. Under the circumstances, these repeated judgments are convincing evidence of the husband's wrongful abandonment of the wife. [Citations omitted].

There would appear to be a direct conflict between the holding in *Wald* and the other cases herein cited. Upon closer examination, however, we conclude that the controlling distinction between *Wald* and the general rule cited in *Sherby, supra,* and *Galusca, supra,* is the fact that no objection to the admissibility of the evidence was offered in *Wald.* In the absence of such objection, the evidence which came into the case was admissible. We cannot, however, speculate as to what the position of the Court of Appeals might have been in the event a seasonable objection had been offered. In view of the fact that the general rule was stated and restated substantially later than the holding in *Wald,* we conclude that the common law rule is still the law in this jurisdiction and that evidence of a judgment in a criminal prosecution is not competent evidence to establish *mens rea,* intent, or the truth of the facts upon which the criminal judgment has been granted, in a civil action for damages arising out of the offense for which the party was convicted. We conclude that the admission, over objection, of the certified copies of the criminal judgments in this case, was clearly prejudicial and amounted to reversible error.

## II. and III.

Appellant next contends that the trial court erred in refusing to admit into evidence a signed written statement submitted to the police some twelve hours after the incident which resulted in injuries to the appellants. The pertinent portion of the statement given to the police by Prahl was stated as follows:

"As I pulled up where we had stopped before, one of the boys jumped out in front of me, I accidentally hit him and I panicked and drove on."

We conclude that this statement was clearly hearsay evidence. Dean McCormick has suggested the following definition of hearsay:

> Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, *Law of Evidence* § 246, p. 584 (2d ed. 1972).

The statement by Prahl was clearly a direct statement offered to prove the fact stated and was therefore dependent for its value upon the veracity of the declarant. *McCormick, supra,* at pp. 590-591.

Maryland has long recognized a declarant's direct assertion of his state of mind is inadmissible, *Groff v. Rohrer,* 35 Md. 327 (1872); and an out-of-court declaration by the declarant of his own intent is inadmissible because the credibility of the declarant is controlling and crucial in determining intent. *Bartell v. Bartell,* 278 Md. 12, 357 A.2d 343 (1976).

Nor is Prahl's statement admissible under any of the exceptions to the hearsay rule. It is not admissible as a business record under Maryland Code (1974, 1980 Repl. Vol.), Courts and Judicial Proceedings Article, § 10-101 b. The law is well established that items such as investigative reports from an accident are admissible under the business records exception only if the information therein contained is within the personal observation of the investigating officer and that any information based upon hearsay is inadmissible. *See Holloway v. Eich,* 255 Md. 591, 258 A.2d 585 (1969); *Levine v. Beebe,* 238 Md. 365, 209 A.2d 67 (1965). It is obvious that the matters contained in Prahl's statement were not based upon the personal observation of the police sergeant.

The statement also is not admissible under the declaration against interest exception to the hearsay rule. In *Houck v.*

*DeBonis,* 38 Md. App. 85, 379 A.2d 765, *cert. denied, Conklin v. Maryland,* 434 U.S. 967, 98 S.Ct. 511, 54 L.Ed.2d 454 (1977), we stated the requirements necessary to qualify the admissibility of hearsay evidence under this exception as follows:

> The requirements have been variously enumerated, but generally include that the declarant be unavailable at the time of trial, that the statement was made against his pecuniary or proprietary interests, that the declaration concerned a fact or event immediately cognizable by the declarant personally, and that no probable motive to falsify the facts existed when the statement was made. [Citation omitted]. [Footnote omitted]. [38 Md. App. at 91].

Applying these standards, it is readily apparent to us that Prahl's statement does not qualify for admissibility under this exception to the hearsay rule. We conclude that the statement is not a declaration contrary to Prahl's pecuniary or proprietary interest but is a self-serving declaration which must be excluded. *Evans v. Buchanan,* 183 Md. 463, 38 A.2d 81 (1944).

Prahl's statement was not admissible as an admission of a party opponent. This exception to the hearsay rule contemplates the use of purported admissions against the person making the admission or against those persons who are bound by the admission. *McCormick, supra,* at pp. 628, 631, states:

> Admissions are the words or acts of a party-opponent, or of his predecessor or representative, offered as evidence *against him.*
>
> Other apparent distinctions [between admissions and declarations against interest] are that admissions must be the statements of a party to the lawsuit (or his predecessor or representative) and must be offered, not for, but *against him. . . .*

We find no basis for allowing the appellants to employ the

self-serving statement of Prahl, an absent co-defendant, against appellee Aetna on the theory that the statement is an admission against the interest of a party-opponent.

Finally, we do not accept appellants' effort to bring Prahl's statement under the "state of mind" hearsay exception. The Maryland decisions establish conclusively that "the state of mind exception" applies exclusively to statements of a present existing state of mind or statements concerning a plan, design, or intention presently entertained by the declarant. *See Maryland Paper Products Company v. Judson,* 215 Md. 577, 139 A.2d 219 (1958); *Pennsylvania Railroad Company v. Simmons,* 159 Md. 114, 150 A. 263 (1930).

Even if Prahl's statement that he accidentally hit one of the appellants could be construed as a declaration of state of mind, it could not serve as the basis to admit, over objection, a self-serving statement of alleged intent of an act which occurred twelve hours earlier. *See Shepard v. United States,* 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933).

We find no error in the trial court's ruling on the admissibility of Prahl's statement to the police officer or upon the oral information given to the officer from which the written statement was prepared.

> *Judgment reversed, case remanded for new trial, costs to be paid by appellee.*