468 A.2d 131

**Brooke P. COTTMAN**

v.

**Marie Antoinette COTTMAN, et al.**

**No. 1964, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Dec. 7, 1983.

**414**

416

T. Bruce Hanley, Baltimore, for appellant.

James K. Archibald, Baltimore, with whom were Venable, Baetjer & Howard, Baltimore, on the brief for appellee, Edward C. Bou.

Samuel M. Morrison, Jr., Washington, D.C., with whom was Christopher M. Kerns, Washington, D.C., on the brief for appellee, Burch, Kerns & Klimek, P.C.

Robert Kolodney, Washington, D.C., in pro. per.

Argued before LISS, BISHOP and BLOOM, JJ.

BLOOM, Judge.

On July 22, 1977, Marie Antoinette Cottman, one of the appellees, filed suit for a divorce against her then husband, James Stewart Cottman, brother of Brooke P. Cottman, the appellant herein. Mrs. Cottman was represented by attorneys Robert Kolodney and Edward C. Bou, who are also appellees herein, as is the law firm of Burch, Kerns & Klimek, P.C. Marie retained Kolodney to represent her in the divorce action. Kolodney is a member of the District of Columbia bar but not of the Maryland bar. He associated himself with Bou, a Maryland lawyer, for purposes of filing a divorce action against James in the Circuit Court for Baltimore County.

In her bill of complaint, Marie alleged, *inter alia,* that James was wrongfully withholding some of Marie's property from her, including the proceeds from the sale of a house which had been owned jointly by Marie and James. In addition to seeking a divorce, Marie sought to impose a constructive trust on "any accounts" held by James.

All attempts to have the summons and complaint served on James proved to be fruitless. On two occasions service by the sheriff was returned *non est.* This led Marie and her

attorneys to believe that James was evading service. In September 1977 Marie informed Kolodney that James had purchased a house located at 13901 Jarrettsville Pike in Phoenix, Maryland. Furthermore, it was ascertained that James had not appeared at that house for about three weeks. Bou then sought and obtained an order, pursuant to Rule 104h, permitting alternative service to be made on James.

In early summer of 1978, Marie discovered that the property at 13901 Jarrettsville Pike was being prepared for imminent sale. She later learned that James had transferred the property to Brooke. She informed Kolodney of these facts, and he then told Bou. Thereafter, in July 1978, a search of the Baltimore County land records disclosed that on August 19, 1977, Brooke became record titleholder to the property. Kolodney advised Bou of those facts and that the property was currently for sale.

These and other facts led the attorneys to believe that Brooke was aiding and abetting James in his efforts to, in the attorneys' words, "avoid his obligations to Marie." For example, they were informed that Brooke was harboring James and some of his and Marie's possessions at a location in Pennsylvania. Furthermore, they received information to the effect that, even though the property was recorded in Brooke's name, James held himself out as the owner of the Jarrettsville Pike property and took actions consistent with such ownership.

As a result of this information, Marie's attorneys filed an amended bill of complaint for divorce which sought to impose a constructive trust on the property located at 13901 Jarrettsville Pike and which named Brooke as a defendant. Meanwhile, on June 14, 1978, Brooke had executed a contract of sale for the property to a third party. As a result of the filing of the amended bill, that sale fell through. After a series of procedural maneuvers by both parties, the amended bill was voluntarily dismissed in April 1980. In September of that year Brooke filed this suit naming Marie, Bou,

Kolodney, and the law firm of Burch, Kerns & Klimek, P.C., as defendants and seeking damages for malicious use of process and abuse of process. In November 1982, summary judgment was granted in favor of all the defendants.

I. *Propriety of Summary Judgment on Malicious Use of Process in Favor of Appellees Kolodney and Bou*

■ In Maryland, a summary judgment will be granted to a party "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Md. Rule 610 d 1. In addition, "[a]nswers [to interrogatories], made under oath by a party, are a proper means of placing before the court facts to be considered in ruling on a motion for summary judgment." *Vanhook v. Merchants Mut. Ins. Co.,* 22 Md.App. 22, 27, 321 A.2d 540 (1974). A summary judgment proceeding is not a substitute for trial. Rather, its function is to determine if a trial is necessary, i.e., whether there is a genuine issue of material fact. *Coffey v. Derby Steel Co.,* 291 Md. 241, 247, 434 A.2d 564 (1981); *Berkey v. Delia,* 287 Md. 302, 326, 413 A.2d 170 (1980); *Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 693–694, 425 A.2d 671 (1981); *Vanhook v. Merchants Mut. Ins. Co., supra.* Thus, our inquiry is whether the trial judge correctly ruled that there were no genuine factual disputes and that, as a result, Kolodney and Bou were entitled to judgment as a matter of law on the malicious use of process count.

■ In order for an action for malicious use of process to succeed, the plaintiff must prove the following: "(i) the institution of civil proceedings (ii) without probable cause (iii) with malice (iv) that the proceedings have terminated in the plaintiff's favor, and (v) that damages were inflicted on the plaintiff by seizure of his property or other special injury." *Wesko v. G.E.M., Inc.,* 272 Md. 192, 197, 321 A.2d 529 (1974) (citations omitted).

Here, we shall focus on the second requirement—that the malicious use defendant shall have instituted the original action without probable cause of success.

> "Probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused is guilty." . . . It is equally clear that if the facts, and the inferences to be drawn therefrom, relied on to constitute probable cause are clear and undisputed, the question is one of law for the court; where the facts are contested, however, whether they are proved is a question for the jury.

*Exxon Corp. v. Kelly,* 281 Md. 689, 697–98, 381 A.2d 1146 (1978) (citations omitted).

In the instant case, both Bou and Kolodney have presented evidence which represents that Marie told them facts which led them to believe that she was entitled to the imposition of a constructive trust on the property in question.

Attached to each defendant's motion for summary judgment were affidavits of Marie, Kolodney and Bou which combined to set forth in detail the facts outlined above. Marie's affidavit related facts known to her and information received by her from named reliable sources pertaining to her husband's purchase of the Jarrettsville Pike property which convinced her that her husband, and not his brother, was the sole and true owner of the property. Kolodney's affidavit set forth the information given him by Marie, his reliance thereon in concluding that James was the real owner of the subject property, his actions in reliance upon that information and his sharing that information with Bou. Bou's affidavit disclosed the information he received from Marie and Kolodney, his reliance thereon and his actions in reliance upon that information. Both attorneys stated under oath that the amended bill of complaint to name appellant as a party and to seek to impress the Jarrettsville Pike property with a trust was filed "because all of the facts which had been related to [them] strongly suggested that

the property had been transferred by James to Brooke for the purpose of preventing Marie from reaching marital assets to which she was entitled."

Kolodney's answers to interrogatories propounded by Brooke recite additional facts upon which he based his decision to seek the constructive trust. For example, Kolodney stated that in August 1977 Marie had told him that James and his mother had gone to live with Brooke in Media, Pennsylvania. Furthermore, he says that Marie had told him that she had gone to Media in May or June 1978 and saw James' automobile parked in Brooke's driveway. Kolodney states that he had called Brooke in September 1977 in an attempt to have Brooke locate James. Brooke threatened Kolodney, told him that he would not tell him James' location, and told him to expect a "war" if he attempted to bring litigation.

Bou's answers to interrogatories contain much of the same information. Those answers further stated that after the date of the assignment of the property to Brooke, James repeatedly held himself out as the owner of the property and, in fact, took actions to maintain the property, including hiring a gardener.

Brooke presented no evidence to dispute the claims of Kolodney and Bou. Brooke did not submit any affidavits in opposition to the motion for summary judgment. Furthermore, his answers to Bou's interrogatories do not contend that Bou and Kolodney were not informed of the matters described in their affidavits and answers.

Brooke instead argues that much of the evidence contained in the affidavits and answers is hearsay evidence and therefore should not have been considered in ruling on the motion for summary judgment. He contends that statements beginning with "I had been informed" and "The information I received was" are hearsay statements. This position involves a fundamental misunderstanding of the hearsay role and its operation.

Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of the matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. McCormick, *Law of Evidence* § 246, p. 584 (2d ed. 1972).

*Kuhl v. Aetna Casualty and Surety,* 51 Md.App. 476, 486, 443 A.2d 996 (1982), aff'd., sub nom *Aetna Casualty and Surety v. Kuhl,* 296 Md. 446, 463 A.2d 822 (1983).

Here, the statements in question were not being offered for their truth. Rather they were offered to show that they were made and to show their effect on the listeners, Kolodney and Bou. "The general rule is that a statement is admissible if introduced for the purpose of showing that a party relied on and acted upon the statement and is not introduced for the purpose of showing that the facts stated in the declaration are true." *Purvis v. State,* 27 Md.App. 713, 716, 343 A.2d 898 (1975). This is precisely the purpose for which these statements were used. For example, the statement in Kolodney's affidavit, "Specifically, Mrs. Cottman informed me that her husband, James, was wrongfully withholding certain of her property from her . . ." was not used to prove its truth, i.e., that James was indeed withholding her property. Instead, the statement was offered to show its effect on Kolodney—that he relied on and acted upon it. Thus, the statements are not hearsay and therefore were properly considered by the trial court in granting the motion.

Hence, there is no dispute as to what was told to Kolodney and Bou. There being no genuine issue of material fact as to what Kolodney and Bou relied on to constitute probable cause, the question is were they entitled to judgment as a matter of law? That is, do the facts that were available to them add up to probable cause as a matter of law? As we noted previously, probable cause is a reasonable ground of suspicion.

Probable cause requires no more than that there be a reasonable basis for the attorney to believe that the client had a "tenable" claim. In other words, probable cause exists unless the attorney prosecutes a claim which a reasonable lawyer would not regard as tenable under the circumstances of the existing facts and laws.

R. Mallen and V. Levit, *Legal Malpractice* § 53 (2d ed. 1981) (footnotes omitted).

■ Defining probable cause as a reasonable basis is not terribly useful to our inquiry; one term is as nebulous as the other. It may be helpful to examine the policy behind the probable cause requirement and the courts' perspective on both the requirement and the cause of action in general. The Court of Appeals has declared that " '[i]f attorneys cannot act and advise freely, and without constant fear of being harassed by suits and actions at law, parties could not obtain their legal rights.' " *North Point Constr. Co. v. Sagner*, 185 Md. 200, 208, 44 A.2d 441 (1945) (citations omitted). Therefore, "[s]uits for malicious prosecution are viewed with disfavor in law and are to be carefully guarded against." *Id.* at 206, 44 A.2d 441 (citations omitted).

This is particularly true when the defendant is an attorney, because of the attorney's professional duty to represent his client zealously. *See, Model Code of Professional Responsibility* EC 7—4 (1979). "[A]n attorney's role is to facilitate access to our judicial system for any person seeking legal relief. As such, probable cause is not to be judged merely upon some personal assessment of a claim's merit. It must encompass consideration of the law's desire to fully meet the client's needs." *Wong v. Tabor*, Ind.App., 422 N.E.2d 1279, 1285 (1981) (footnote omitted).

The Indiana Court of Appeals in *Wong* adopted the two-pronged test contained in *Tool Research & Engineering Corp. v. Henigson*, 46 Cal.App.3d 675, 120 Cal.Rptr. 291, 297 (1975), as a standard for determining whether a lawyer has acted with probable cause when he decides to commence litigation: " 'The attorney must entertain a subjective belief

in that the claim merits litigation and that belief must satisfy an objective standard.' " *Wong v. Tabor, supra,* at 1287 quoting *Tool Research & Engineering Corp. v. Henigson, supra.*

■ In determining whether the attorney has a subjective belief that the claim merits litigation, it is important to remember that "[i]t is the attorney's reasonable and honest belief that his client has a tenable claim that is the attorney's probable cause for representation . . . and not the attorney's conviction that his client must prevail." *Wong v. Tabor, supra,* at 1288 quoting *Tool Research & Engineering Corp. v. Henigson, supra.* Generally, the subjective belief requirement will be easily met. The attorney does not have the duty to investigate fully his client's claim before bringing suit. *Wong v. Tabor, supra,* at 1289. It has been suggested that a claim merits litigation if it is neither unlawful nor frivolous. R. Mallen and V. Levit, *supra.* Here, the evidence indicates that both Kolodney and Bou entertained a subjective belief that probable cause existed; that the constructive trust litigation was neither unlawful nor frivolous.

We now turn to the objective requirement of probable cause. This seems to be the more important prong of the test. In fact, it has been suggested that in analyzing the probable cause of an attorney in such an action, the entire inquiry should focus on the objective criteria; that "[t]he attorney's actual belief of probable cause is not relevant. . . ." R. Mallen and V. Levit, *supra.* Indeed, the concept of probable cause appears to involve more of an objective ("*reasonable* grounds") inquiry than a subjective one. With this in mind we look at the objective standard developed by the *Wong* court:

> We conclude that the objective standard which should govern the reasonableness of an attorney's action in instituting litigation for a client is whether the claim merits litigation against the defendant in question on the basis of the facts known to the attorney when suit is commenced.

The question is answered by determining that no competent and reasonable attorney familiar with the law of the forum would consider that the claim was worthy of litigation on the basis of the facts known by the attorney who instituted suit.

*Wong v. Tabor, supra,* at 1288 (footnote omitted).

The question is whether the facts, as known by Kolodney and Bou, would lead a competent and reasonable attorney to consider seeking a constructive trust. If a competent and reasonable attorney would consider that an attempt to impose a constructive trust was worthy of litigation on the basis of the facts known by Kolodney and Bou, then probable cause existed. If, however, that situation is not shown, then probable cause to bring the claim did not exist.

A constructive trust is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property. The remedy is applied by operation of law where property has been acquired by fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it. . . . The purpose of the remedy is to prevent the unjust enrichment of the holder of the property. (citations omitted)

*Wimmer v. Wimmer,* 287 Md. 663, 668, 414 A.2d 1254 (1980) (citations omitted); *see also,* Dobbs, *Handbook on the Law of Remedies* § 4.3 (1973).

■ Here, the facts known by Kolodney and Bou indicate that an attempt to impose a constructive trust was a reasonable act. The two attorneys were presented with a scenario whereby their client's estranged husband was attempting to evade process in a divorce suit and that the husband had withheld some of their client's property from her including proceeds from the sale of marital property. Furthermore, they were informed that the husband had acquired a house. Subsequently they learned that title to the house was held

by the husband's brother and that the house was being prepared for imminent sale. The brother seemed to be harboring the husband, along with personal property of both the husband and the client, at the brother's house and at an apartment complex he owned, both located in Pennsylvania.

The cumulative effect of these facts would certainly tend to lead a competent and reasonable attorney to consider an attempt at imposing a constructive trust on the house bought by husband. Under the facts known to the attorneys, it was very possible that the husband had bought the property with assets which included proceeds from the sale of marital property or from other assets which belonged to their client. If the estranged husband had used such assets to purchase the house, it would not be unreasonable for an attorney representing the wife to seek the imposition of a constructive trust or an equitable lien. This is true even if the property were to be transferred to a third person, particularly if the third person had actual knowledge of the inequitable behavior of his transferor and, in fact, aided in that conduct.

> If X [James] obtains property [marital assets] from the plaintiff [Marie] under circumstances warranting restitution, the plaintiff may impose a constructive trust upon the property [or proceeds of that property: the house] in the hands of X. If, before this is done, X transfers the property to T, the third person [Brooke], the plaintiff may still be permitted to recover the property by way of constructive trust. In other words, T may be held to be a constructive trustee. Whether this is done depends largely on whether T is a bona fide purchaser for value. If he is, no constructive trust will be imposed. On the other hand, *if he had notice of the plaintiff's claim,* he is not a bona fide purchaser and the constructive trust may be imposed against him, though he was not guilty of wrongdoing himself.

Dobbs, *supra* (emphasis added) (footnote omitted).

On the basis of the uncontradicted facts set forth in the affidavits and answers to interrogatories, Kolodney and

Bou had probable cause to seek to impose a constructive trust. That ultimately Marie may not have been entitled to the remedy is not relevant here. All that we are concerned with is whether her attorneys acted reasonably by pursuing the remedy. We hold that they did and that they acted with probable cause.

## II. *Propriety of Summary Judgment on Malicious Use of Process in Favor of Appellee Burch, Kerns & Klimek, P.C.*

Appellant brought this action against Burch, Kerns & Klimek, P.C., "[f]irst, for the alleged acts of their 'officer, agent and employee,' Appellee, Robert Kolodney. Second, directly against the entity itself." Appellant's single argument appears to be that Kolodney and Burch, Kerns & Klimek, P.C., have formed a partnership by estoppel. There are two problems with appellant's argument. One, we have already determined that Kolodney acted with probable cause.

Two, even if Kolodney had not acted with probable cause, no partnership by estoppel existed. Appellant relies on our decision in *Myers v. Aragona*, 21 Md.App. 45, 318 A.2d 263 (1974), to support his position. In that case, Myers was held liable, under the Uniform Partnership Act, to the plaintiff for funds misappropriated from the plaintiff by another attorney working with Myers. We held that Myers was estopped from denying the existence of a partnership between him and the misappropriating attorney. This estoppel arose, in part, from the two attorneys' stationery which listed both of their names on the letterhead. Appellant argues that since Kolodney's name appeared on the letterhead of Burch, Kerns & Klimek, P.C., *Myers* controls the issue and a partnership by estoppel existed.

A careful reading of the Uniform Partnership Act, applied against the undisputed facts, leads us to a contrary result. The affidavit of Burch, Kerns & Klimek, P.C., states that "Mr. Kolodney's name first appeared on the firm's letterhead at or about January, 1979. His name never appeared

at the top of the letterhead, but was always listed at the left side." The amended complaint naming appellant as a defendant was filed in July 1978. The Act provides that:

When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to anyone, as a partner in an existing partnership or with one or more persons not actually partners, he is liable to any such person to whom the representation has been made, who has, on *the faith of the representation, given credit to the actual or apparent partnership* . . . .

Md.Corps. & Ass'ns Code Ann. § 9–308(a) (1975) (emphasis added).

Here, since the "representation" (Kolodney's name on the letterhead) was made *after* the institution of the constructive trust suit, no partnership by estoppel occurred. Furthermore, the concept of partnership by estoppel could not be the basis for liability in a tort action for malicious use of process. This is because appellant did not "give credit" to the purported partner; rather, he was injured by the purported partner's allegedly tortious acts. *See also,* 68 C.J.S. *Partnership* § 172 (1950).

### III. *Propriety of Summary Judgment on Both Counts in Favor of Appellee Marie Antoinette Cottman*

In support of her motion for summary judgment, Marie presented an affidavit to the court. While it is generally true that the trial court is to take into consideration the statements made in the affidavit when ruling on the motion for summary judgment, such is not the case when the affidavit is defective in its form. Maryland Rule 610 b requires that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Here, Marie's supporting affidavit fails to state that it was "made on personal knowledge" of Marie or that she

was "competent to testify to the matter stated therein." The Court of Appeals has held that the absence of these verifying phrases will cause the affidavit to be disregarded. *White v. Friel,* 210 Md. 274, 279–280, 123 A.2d 303 (1956); *Fletcher v. Flournoy,* 198 Md. 53, 57–58, 81 A.2d 232 (1951).

Similarly, the answers to the interrogatories served upon Marie's attorney by appellant do not help Marie. While "[a]nswers, made under oath by a party, are a proper means of placing before the court facts to be considered in ruling on a motion for summary judgment," *Vanhook v. Merchants Mut. Ins. Co., supra,* the answers here were not made by a *party.* Rather, due to Marie's absence from the country, Marie's attorney answered the interrogatories without Marie seeing the answers or swearing to their accuracy. Therefore, there was no evidence upon which the trial court could hold that there were no genuine issues of material fact and that Marie was entitled to judgment as a matter of law. The trial court erred in so holding.

IV. *Propriety of Summary Judgment on Abuse of Process in Favor of Appellees Kolodney and Bou*

■ In addition to the malicious use of process counts, appellant also alleges that the appellees committed abuse of process by commencing the constructive trust proceeding. The tort of abuse of process differs greatly from the tort of malicious use of process.

> "[I]n an action for abuse of process it is unnecessary for the plaintiff to prove that the proceeding terminated in his favor, or that the process was obtained without probable cause or in the course of a proceedings begun without probable cause." . . . The essential elements of abuse of process are (1) an ulterior motive, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceeding.

*Wood v. Palmer Ford, Inc.,* 47 Md.App. 692, 706, 425 A.2d 671 (1981) (citation omitted).

Appellant contends that the constructive trust action was commenced "in hopes of either extorting information from

Appellant as to the whereabouts of his brother and/or forcing the appearance of James Stewart Cottman, the hesitant husband." Appellant points to several facts which, he argues, support his proposition.

First, it appeared to Kolodney and Bou that James was attempting to evade service. Pursuant to their conclusion, they sought and obtained a court order authorizing alternative service under Rule 104 h. Second, appellant points to statements made by Kolodney in his answers to appellant's interrogatories. Specifically, Kolodney stated that he called appellant in September 1977 and asked him "to attempt to have his brother reach an amicable settlement with his wife." Kolodney then states that he was threatened by appellant, that appellant stated that he would not tell Kolodney his brother's location, and that appellant told Kolodney to expect "war" if he brought litigation against James.

Furthermore, appellant contends that Kolodney and Bou were aware that appellant took an assignment of the contract of sale from James. Appellant also contends that Kolodney and Bou were aware that appellant reimbursed James for the deposit James had made on the property. Although it is true that Kolodney and Bou were aware of the assignment, that was the reason for bringing the constructive trust action, there is no evidence to support the contention that Kolodney and Bou were aware of appellant's payment to James.

If Kolodney and Bou reasonably believed, as we have held they did as a matter of law, that marital assets had been used to purchase the property in question, we cannot say that a rational factfinder could determine that the purpose of issuing process against appellant was to locate James. Rather, the only rational inference is that Kolodney and Bou used the process in the regular conduct of the proceeding, i.e., to attempt to impose a constructive trust on the property in favor of their client Marie.

Thus, there can be no factual dispute as to the second element of the tort; the two attorneys did not

commit a willful act in the use of the process not proper in the regular conduct of the proceeding. Therefore, we hold that the trial court was correct in granting the summary judgment and we affirm that ruling.

V. *Propriety of Summary Judgment on Abuse of Process in Favor of Appellee Burch, Kerns & Klimek, P.C.*

Again, appellant attempts to impose liability on Burch, Kerns & Klimek, P.C., through an alleged partnership by estoppel. One, since we have determined that there is no liability on the part of Kolodney, there is no liability on the part of his purported partner, Burch, Kerns & Klimek, P.C. Furthermore, for the reasons we expressed in Part II, partnership by estoppel could not provide liability in a tort action for abuse of process.

JUDGMENT AFFIRMED AS TO APPELLEES ROBERT KOLODNEY, EDWARD C. BOU AND BURCH, KERNS & KLIMEK, P.C.

JUDGMENT REVERSED AND CASE REMANDED AS TO APPELLEE MARIE ANTOINETTE COTTMAN.

COSTS TO BE PAID THREE-FOURTHS BY APPELLANT, ONE-FOURTH BY APPELLEE MARIE ANTOINETTE COTTMAN.