## H. GLEN REAVER ET AL. *v.* MARTIN BARLLY ET AL.

[No. 256, September Term, 1975.]

*Decided November 6, 1975.*

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*Hugh E. Donovan*, with whom were *Donahue & Ehrmantraut* on the brief, for appellants.

*Austin W. Brizendine* for appellees.

MOORE, J., delivered the opinion of the Court.

On November 19, 1974, a jury in the Circuit Court for Baltimore County (Turnbull, J., presiding) awarded H. Glen Reaver, plaintiff-appellant, compensatory damages in the sum of $60,000 at the conclusion of a negligence action. He had instituted suit individually and to the use of Hartford Insurance Group,[1] against three individuals (Martin Barlly, G. P. Van Hessen and F. R. Vigeveno) trading as Van Hessen and Company, defendants-appellees. On March 10, 1975, the trial court granted appellees' motion for judgment *n.o.v.* because, Judge Turnbull stated:

> "There is no evidence of negligence on the part of [defendants' agent], and . . . my duty requires me, in spite of the fact that the jury brought a verdict in in favor of the plaintiff, to grant the Motion for Judgment N.O.V."

Appellant contends that at trial he offered sufficient evidence of appellees' negligence and that the granting of the motion for judgment *n.o.v.* constituted reversible error.

I

Appellant, age 40 and a truck driver with eleven years experience, was injured in an accident which occurred on the morning of January 28, 1972, at appellees' place of business, a lumber yard near Stone Chapel Road in Randallstown, Baltimore County. The day was cold and a light snow — not

---

1. Hartford Insurance Group had made payments for medical care and lost wages under its Workmen's Compensation Insurance Policy with appellant's employer.

exceeding one inch — had fallen. Appellant and another driver, Russell Adkins, had driven to the yard in separate vehicles, each to obtain a trailer-load of logs. The logs were 14 to 18 inches in diameter and 8 to 10 feet in length. They were being loaded aboard the flat-bed trailers by a 544 John Deere fork lift, operated by Clyde Hughes who had been employed by the appellees-defendants for approximately nine years.

According to the testimony, the practice in loading was to assemble the logs in three separate tiers, each consisting of a four-level pyramid of 14 logs, with 5 at the bottom, then 4, 3 and 2. As each tier was completed, it would be secured by a log chain. The trailers also had "side pockets" in which "short stacks", approximately 2 feet in height, were inserted to hold the bottom logs. Hughes further testified that his method of loading logs onto trucks was to leave a space of six inches to one foot between tiers.

Appellant was standing on the ground next to the trailer. He had thrown a chain across the second or middle tier and was reaching up to hook it. His back was to Clyde Hughes, the fork lift operator, who was proceeding to place two logs on the third or rear tier. According to the other truck driver, Russell Adkins, one of the logs on the fork lift struck the tier with which appellant was working, causing it to break open. Mr. Adkins testified:

> "Well, Mr. Hughes was operating a fork lift, and he had two logs on the lift, and one of those logs bumped, caught the corner of the second tier, which caused it to come out, jump out just like lightning. And I hollered for Glen to look out, and he turned real quick, but one log caught him on the shoulder, and shoved him — if it wouldn't have been for that he would have been underneath of the logs — and it shoved him towards the front of the truck."

Appellant sustained a multiple fracture of the left femur which caused the left leg to be three-quarters of an inch shorter than the right. He was in traction at Baltimore County General Hospital for nearly eight weeks. Upon

discharge he was placed in a cast and was immobilized in bed at home for seven weeks. Rehabilitative therapy after the cast was removed permitted him to walk with the aid of crutches. After some five more weeks he regained the ability to walk unaided but continued to limp and experience pain in his left knee.[2] His orthopedic surgeon testified that appellant had permanent disability "in the range of about 25%."

Appellant urges upon us that the testimony at trial concerning the bumping of the second tier with the logs on the fork lift and the action of the fork lift operator in proceeding to load the third tier under the circumstances made the existence of negligence *vel non* a question for the jury and that the trial court erred in granting the motion for judgment *n.o.v.* Appellees controvert this position and also argue that appellant assumed the risk or was contributorily negligent as a matter of law.

## II

It is fundamental that, in reviewing the granting of a motion for judgment *n.o.v.*, we must consider all the evidence — together with the inferences fairly deducible therefrom — in the light most favorable to the party against whom the motion was made.

(A) *Evidence as to Negligence of the Fork Lift Operator in Bumping the Middle Tier of Logs.*

Russell Adkins was the driver of the trailer which was being loaded at the time of the accident and gave eyewitness testimony. On direct examination he described briefly what had happened:

"Well, Mr. Hughes was operating a fork lift, and he had two logs on the lift, and one of those logs bumped, caught the corner of the second tier, which caused it to come out, jump out just like lightning."

---

2. Such knee pain was attributed by his treating physician to the change in pressure within the knee caused by the change in bone structure as the fractures mended.

618

Appellant places reliance — and, we think, properly so — upon *Hilton Quarries, Inc. v. Hall,* 161 Md. 518, 158 A. 19. (1932), wherein the facts were somewhat similar to those in the instant case. There a truck driver obtained a judgment after he was struck by a box of crushed stone which was being loaded by a derrick onto his truck in a quarry. There was testimony that the derrick operator had misapplied a foot brake in the operation of the derrick, which caused the box to swing wildly and strike the driver. Chief Judge Bond, writing for the Court which reversed on other grounds, held that while testimony concerning the operation of the brake was

> "to some extent inferential, or speculative, this Court concludes that the jury might find from it that his sudden manipulation of the foot brake did cause a rebound and momentary loss of control of the box of stone, and, given that finding, it would seem permissible for the jury as practical men to conclude that this too sudden action was not consistent with ordinary care. And a duty of care toward the plaintiff ... could be found from the testimony that it was part of his work to assist in loading." 161 Md. at 523.

The appellees argue that *Hilton Quarries* can be distinguished from the instant case in that "there is no evidence whatever of any negligent act or omission to act on the part of the operator which caused the log on the fork lift to bump the log on the middle of the trailer bed." We cannot so conclude. Negligence could have been found by the jury in the striking of the center tier by the logs on the fork lift, which is analogous to the misapplication of the brake in *Hilton Quarries.* The jury here was entitled to find that the bumping of the center tier was not consistent with ordinary care.

The trial court cited, and appellees rely upon, *Buttry v. Jefferson,* 220 Md. 447, 448, 154 A. 2d 346 (1959) in support of the proposition that "[t]here is nothing unusual in a log rolling while being moved." This truism is not germane here,

since in the instant case a log did not roll while being moved, but, rather, struck appellant after being struck by another log.

There was testimony at trial that Hughes did not do "anything out of the ordinary [or] anything out of what [the witness] considered to be good practice in loading this trailer." Appellees contend that *Combustion Engineering Co., Inc. v. Hunsberger,* 171 Md. 16, 187 A. 825 (1936) therefore requires the affirmance of the judgment *n.o.v.* In that case, Chief Judge Bond found that the fact that a wedge used in construction fell on the plaintiff did not permit a jury instruction that the fall of the wedge was evidence of negligence. He observed that:

> "It would seem likely that, with workmen handling loose tools continually, the falling of some of them at times must be expected despite all precautions. . . . [I]t seems to the court plain that there must be some falling of small tools and other objects handled with ordinary care in the course of work, and that therefore a particular fall cannot, of itself and without more, afford proof of negligence. Unless facts appear to indicate negligence it must be taken as no more than one of the incidents of work, to be expected." 171 Md. at 19, 20.

In the instant case, of course, the falling of the log which struck appellant was not to be expected. Hughes himself was explicit concerning the fact that bumping the middle tier was an unusual occurrence.[3]

HUGHES: ". . . as long as you don't bump the middle tier or touch the logs. . . . But still, like I say, I don't know what happened.

---

3. Hughes testified without objection that he had, on occasion, bumped other tiers while loading trucks but that no similar results had ensued. Dean Prosser has noted that such evidence does not preclude a finding of negligence since "[t]here can certainly be such a thing as customary negligence." Prosser, *Law of Torts* (4th ed., 1971) § 33 at 167.

| | |
|---|---|
| THE COURT: | Well, if you had bumped the middle tier there, would that have been an unusual circumstance? |
| HUGHES: | That's true. |
| THE COURT: | You say it would have been? |
| HUGHES: | Yeah." |

Thus it seems clear that there was evidence of deviation from ordinary care and, therefore, of negligence in Hughes' operation of the fork lift. *See,* Anno: Crane or Derrick — Negligent Operation, 81 A.L.R.2d 473 (1962).

(B) *Evidence as to Negligence of the Fork Lift Operator in Proceeding to Load the Back Tier.*

Mr. Hughes, the operator of the fork lift, employed by the appellees, admitted that he saw appellant. "He was on one side [of the trailer] and Mr. Adkins was on the other." The fork lift itself was located toward the back of the trailer. Appellant was in the process of hooking the chain, to secure the second tier.[4]

There was testimony by one of Mr. Hughes' employers, Felix R. Vigeveno, on direct examination, that in the process of loading logs "extreme caution" had to be taken. Another defense witness, Francis Reaver, a partner in the firm which employed appellant, who was called by the appellees,[5] gave testimony concerning the "general custom in the business" during the process of chaining a completed tier. He said:

"The driver should point out to the operator that he's in the process of chaining, *and the operator at that time should wait until the chains are put on.*" (Emphasis added.)

In the light of Hughes' admission that he saw appellant, who was then "in the process of chaining," a jury of practical

---

4. The first and third tiers had not been completed.

5. Mr. Reaver testified on cross-examination that approximately 90% of his firm's business is done with appellees.

men and women could reasonably have concluded that the "general custom in the business" — the applicable standard of ordinary care — had not been observed; that Hughes should have desisted his operation but did not. *Central Cab Company v. Clarke,* 259 Md. 542, 270 A. 2d 662 (1970).

We conclude that in this respect also, there was indeed evidence of negligence which the court properly submitted to the jury in the first instance and that the granting of the judgment *n.o.v.* was improper.

## III

Appellees contend, in two separate sections of their brief, that appellant (a) assumed the risk of injury and (b) was contributorily negligent as a matter of law. Voluntary assumption of risk and contributory negligence are not dissimilar. While a distinction is frequently made on the basis that "assumed risk implies intentional exposure to a known danger, which may or may not be true of contributory negligence," *Sacks v. Pleasant,* 253 Md. 40, 46, 251 A. 2d 858 (1969), it is clear that, as Judge Moylan aptly stated, "[t]he distinction between these two defenses . . . is a fine one in Maryland." *Maryland Sales & Service Corp. v. Howell,* 19 Md. App. 352, 360, 311 A. 2d 432 (1973). *See, also, Evans v. Johns Hopkins University,* 224 Md. 234, 167 A. 2d 591 (1961). The former was not urged upon the trial court and was therefore not decided.[6] Maryland Rule 1085. We do not rest our disposition of this point, however, on the Rule alone. The basis for appellees' contentions with respect to *both* voluntary assumption of risk and contributory negligence is essentially the same — that appellant should have desisted from chaining the middle tier or pointed out to the fork lift operator that he was chaining and asked the operator to suspend. We find this approach without merit, in the light of the operator's testimony that he saw appellant and the testimony of Francis Reaver that, in effect, a fork lift operator should desist when he knows that the truck

---

6. Contributory negligence as a matter of law was one of the grounds asserted by appellees in their motion for judgment *n.o.v.*

driver is securing the chain. We find no justification for appellees' contention — under either theory — that the case should have been withdrawn from the jury. *See, Rooney v. Statewide Plumbing and Heating,* 265 Md. 559, 564, 290 A. 2d 496 (1972).

The trial court, in its instructions, carefully and correctly explained that appellant was "legitimately and properly" on the Van Hessen property as a business invitee and that there was a duty on the appellees to use reasonable care for his safety. The court with equal care instructed that one who contributes to his own injury through his own negligent act is not entitled to recover.

We hold that appellant's responsibility with respect to his own safety was a jury question.

> *Judgment reversed; jury verdict and judgment for appellant reinstated; costs to be paid by the appellees.*